*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF HENRY GEROW, JR., by MARIE
GEROW, Personal Representative,

        Plaintiff-Appellant,

v

RONALD L. THIES, JR., M.D. and EMERGENCY
MEDICINE SPECIALISTS, PC,

        Defendants-Appellees,

and

ST. JOHN RIVER DISTRICT HOSPITAL,

        Defendant.

UNPUBLISHED
July 2, 2020

No. 348221
St. Clair Circuit Court
LC No. 17-001458-NH

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff, the personal representative of the estate of the decedent, Henry Gerow, Jr. (Gerow), appeals as of right an order granting summary disposition in favor of defendants, Ronald L. Thies, Jr., M.D. (Dr. Thies), and Emergency Medicine Specialists, PC (EMS).[1] We affirm.

## I. FACTUAL BACKGROUND

This action arises out of Gerow's death of acute sepsis and pneumonia. On November 7, 2013, Gerow went to a facility owned by defendant, St. John River District Hospital (St. John), for emergency treatment. Gerow was treated by Dr. Thies. Gerow went to the emergency room three times in the week leading to his death, each time complaining of severe back pain from a work-

---

[1] Plaintiff accepted a settlement from defendant, St. John River District Hospital; accordingly, St. John River District Hospital does not participate in this appeal.

related injury. When Dr. Thies saw Gerow, Gerow again complained that he was experiencing severe back pain. Dr. Thies examined Gerow and surmised the pain was caused by a back injury Gerow sustained at work. Dr. Thies gave Gerow an injection of Toradol and Dilaudid, and released him from the emergency room without further treatment. Gerow died three days later, on November 10, 2013.

Plaintiff filed a complaint against Dr. Thies, EMS, and St. John, alleging medical malpractice. Plaintiff alleged that Dr. Thies failed to meet the applicable standard of care when treating Gerow, who presented at the hospital three times for the same complaint of back pain over a weeklong period. Plaintiff contended that, if Dr. Thies had performed a more thorough examination, "abnormal imaging or lab tests would have resulted, which, more likely than not, would have changed [Gerow's] treatment, disposition, and outcome." Plaintiff contended Gerow's death was a direct and proximate result of Dr. Thies's negligence, and but for said negligence, Gerow's infection could have been timely diagnosed and treated. Plaintiff further alleged EMS was vicariously liable for Dr. Thies's negligence because EMS employed Dr. Thies.

Dr. Thies and EMS filed a motion for summary disposition, and argued that plaintiff failed to establish a genuine issue of material fact regarding the element of causation. Dr. Thies and EMS argued that deposition testimony given by one of plaintiff's expert witnesses, Dr. Marc Eckstein (Dr. Eckstein), indicated Gerow exhibited no classic clinical signs supporting a sepsis or pneumonia diagnosis when he was treated by Dr. Thies, suggesting Dr. Thies did not violate the applicable standard of care by failing to test for pneumonia or infection. Dr. Thies and EMS further observed that deposition testimony from another of plaintiff's expert witnesses, Dr. James Gordon (Dr. Gordon), suggested it was medically impossible to determine when Gerow contracted pneumonia and sepsis. Dr. Thies and EMS argued that no evidence directly supported plaintiff's argument that Gerow had pneumonia and sepsis when he was treated by Dr. Thies; consequently, plaintiff could not show that Gerow would still be alive if Dr. Thies treated him for pneumonia and sepsis on November 7, 2013. Dr. Thies and EMS asked the trial court to grant their motion for summary disposition and dismiss plaintiff's claims of negligence. The trial court agreed with Dr. Thies and EMS, opining that "it is purely speculative as to whether or not any sign of a pneumonia, a typical pneumonia—not blood borne pneumonia—would be present on that chest, chest x-ray thereby necessitating treatment in the form of antibiotics or something else." The trial court entered an order granting summary disposition to Dr. Thies and EMS. This appeal followed.

## II. CAUSATION

Plaintiff argues that the trial court erroneously ignored Dr. Eckstein's expert testimony regarding causation, and thus erred by granting summary disposition to Dr. Thies and EMS. We disagree.

Dr. Thies and EMS moved for summary disposition under MCR 2.116(C)(10). This Court reviews the grant or denial of a motion for summary disposition de novo. *Value, Inc v Dep't of Treasury*, 320 Mich App 571, 576; 907 NW2d 872 (2017). "A motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). A genuine issue of material fact " 'exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue

upon which reasonable minds might differ.' " *Cox v Hartman*, 322 Mich App 292, 299; 911 NW2d 219 (2017) (citation omitted).

In a medical malpractice action, plaintiff "bears the burden of proving (1) the applicable standard of care, (2) a breach of that standard by the defendant, (3) an injury, and (4) proximate causation between the alleged breach of duty and the injury." *Rock v Crocker*, 499 Mich 247, 255; 884 NW2d 227 (2016). This action concerns proximate causation. Proximate causation is comprised of two distinct elements: (1) cause in fact, and (2) legal causation. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 86-87; 684 NW2d 296 (2004). Specifically, plaintiff's action concerns the cause in fact prong of proximate causation. "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id*. (citation omitted). A plaintiff is required to "adequately establish cause in fact in order for legal cause . . . to become a relevant issue." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994).

Plaintiff contends the trial court's decision to grant summary disposition to Dr. Thies and EMS indicates the trial court ignored deposition testimony from Dr. Eckstein. Plaintiff directs this Court to various portions of Dr. Eckstein's testimony, in which Dr. Eckstein testified Gerow likely would have survived if his condition had been identified and treated by Dr. Thies. However, plaintiff's presentation of Dr. Eckstein's testimony ignores that there was no evidence that Gerow had pneumonia or a septic infection when he saw Dr. Thies. Plaintiff correctly argues that "[c]ause in fact may be established by circumstantial evidence . . . ." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003). Nevertheless, "such proof must be subject to reasonable inferences, not mere speculation." *Id*. Nothing in Gerow's hospital records indicated that he was displaying symptoms typical of pneumonia or sepsis. For example, Dr. Eckstein attested that the classic symptoms of pneumonia are "[f]ever, chills, cough, productive sputum, chest pain, [and] shortness of breath," but Gerow exhibited none of those symptoms when he was treated by Dr. Thies. The trial court recognized that there was no direct causal connection to be made between Dr. Thies's treatment of Gerow and Gerow's death.

Moreover, plaintiff's presentation of Dr. Eckstein's testimony ignores that Dr. Eckstein agreed a chest x-ray may not have shown the presence of pneumonia. At Dr. Eckstein's deposition, the following exchange took place:

*Q*. How do you know [a chest x-ray] would have shown a pneumonia when [Gerow] doesn't have any of the signs of symptoms that are consistent and compatible with pneumonia?

*A*. I can't say for certain.

\* \* \*

*A*. I can't say with certainty . . . that the x-ray would have shown a pneumonia, correct.

Contrary to plaintiff's argument, Dr. Eckstein's testimony was considered by the trial court, which opined that it was "purely speculative as to whether or not any sign of a pneumonia . . . not blood

borne pneumonia—would be present on that chest, chest x-ray thereby necessitating treatment in the form of antibiotics or something else."

Additionally, the trial court was aware that Dr. Gordon testified it was medically impossible to determine whether Gerow had pneumonia or sepsis when Dr. Thies treated him. Dr. Gordon testified that there was no reason for Dr. Thies to suspect that Gerow was suffering from pneumonia or sepsis when he treated Gerow, because Gerow did not present with any symptoms of pneumonia or sepsis. Dr. Thies was operating solely on the basis of Gerow's complaint of pain from a work-related back injury, and his treatment of Gerow was appropriate because of what Gerow told him regarding the likely cause of his pain.

Ultimately, plaintiff has not presented evidence that would support the deduction that Dr. Thies's alleged medical neglect was a cause in fact of Gerow's death, or that the trial court ignored testimony from Dr. Eckstein regarding causation. It is undisputed that Dr. Thies treated Gerow on November 7, 2013, and Gerow died of sepsis and pneumonia on November 10, 2013. However, "[a]n explanation that is consistent with known facts but not deducible from them is impermissible conjecture." *Wiley*, 257 Mich App at 496. Plaintiff has failed to show a causal connection between Dr. Thies's treatment and Gerow's death, which was acknowledged by the trial court when it ruled in favor of Dr. Thies and EMS's motion for summary disposition. In sum, the trial court did not err by finding that plaintiff failed to establish proximate cause and subsequently granting Dr. Thies and EMS's motion for summary disposition.

Affirmed. Defendants may tax costs.


/s/ David H. Sawyer
/s/ Patrick M. Meter