*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ABCS TROY, LLC,

Plaintiff-Appellee,

v

LOANCRAFT, LLC,

Defendant-Appellant.

FOR PUBLICATION
April 29, 2021
9:15 a.m.

No. 349835
Oakland Circuit Court
LC No. 2019-171003-AV

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

SWARTZLE, P.J.

Our district courts are courts of limited jurisdiction, and one of the limits is that the amount in controversy must not exceed $25,000.00. Damages are generally included in that calculation, while litigation expenses, including attorney fees, are generally excluded. The primary question on appeal is how to treat a claim for attorney fees under the parties' contractual fee-shifting provision—as damages, and therefore included in the amount in controversy, or as litigation expenses, and therefore excluded from the amount in controversy? As explained, we conclude that attorney fees sought under a contractual fee-shifting provision are a form of general damages and, as a result, are properly considered as part of the amount in controversy. Finding no error by the district court or circuit court on this issue, we affirm.

## I. BACKGROUND

Plaintiff initiated this lawsuit against defendant in district court. Defendant had leased commercial space from plaintiff. When the lease expired, defendant vacated the premises, and plaintiff alleged that defendant left the premises in poor condition. Plaintiff claimed that it spent approximately $6,132 on repairs to the property necessitated by defendant's actions, and it sent defendant a bill for the cost of the repairs, but defendant declined to reimburse plaintiff.

Relevant to this appeal, the lease included a fee-shifting provision. Paragraph 52 of the lease reads in full: "In the event of a dispute arising hereunder, the non-prevailing party shall be responsible for the payment of the actual attorney fees incurred by the prevailing party."

Plaintiff sued defendant, alleging claims for breach of contract and promissory estoppel and seeking, among other relief, attorney fees. Defendant filed a counter-complaint against plaintiff, alleging its own claim for breach of contract and seeking, among other relief, attorney fees. After a bench trial, the district court ruled in favor of defendant, awarding it $2,692.56 in damages on its counterclaim. Defendant moved for an award of attorney fees of $48,576.25, under the fee-shifting provision of the parties' contract.

The district court ruled that an award of attorney fees under the parties' contract qualified as damages subject to its jurisdictional limit of $25,000. The district court entered judgment in the amount of $25,000 in favor of defendant, including an award on the counterclaim of $2,692.56 and an award of fees under the fee-shifting provision of $22,307.44.

Defendant moved for reconsideration of that decision, which the district court denied. Defendant also moved for attorney fees as sanctions, arguing that plaintiff's lawsuit was frivolous. The district court found that plaintiff's complaint was not frivolous and denied the motion.

Defendant appealed to the circuit court. On appeal, defendant argued that the district court erred by capping defendant's combined award at the district court's jurisdictional limit. According to defendant, attorney fee awards should not count toward to the jurisdictional limit, whether contractual or otherwise. Defendant also argued that the district court erred with respect to its denial of defendant's motion for sanctions. The circuit court affirmed the district court's judgment, including the cap on contractual attorney fees, but the court vacated the order denying defendant's motion for sanctions and remanded to the district court for further findings.

Defendant appealed, by leave granted, the circuit court's affirmance with respect to the contractual attorney fees. *ABCS Troy, LLC v Loancraft, LLC*, unpublished order of the Court of Appeals, entered October 30, 2019 (Docket No. 349835). The matter involving sanctions is not at issue on appeal.

## II. ANALYSIS

Defendant raises two claims of error on appeal. First, the district court misread existing case law by holding that attorney fees awarded under a contractual fee-shifting provision are counted against that court's jurisdictional cap of $25,000.00. Defendant points to cases holding that attorney fees are not included in the amount in controversy with respect to a district court's subject-matter jurisdiction. Second, the district court did not enforce the parties' lease as-written, which called for the award of "actual" attorney fees, not reasonable fees.

We begin with the first claim and, as explained, our resolution of that claim moots the second one.

### A. STANDARD OF REVIEW

Ordinarily, we review a trial court's decision on attorney fees for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). In this case, however, the critical question involves the jurisdiction of the district court. This presents a question of law that we review de novo. *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016).

-2-

## B. DISTRICT COURT'S SUBJECT-MATTER JURISDICTION

Our circuit courts are this state's trial courts of general jurisdiction. Const 1963, art 6, § 1. The 1963 Michigan Constitution authorized the Legislature to create courts of limited jurisdiction, and the legislative body "exercised this constitutional authority in 1968 by creating the district court." *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 216; 884 NW2d 238 (2016). As set in statute, the district court has "exclusive jurisdiction in civil actions when the *amount in controversy* does not exceed $25,000.00." MCL 600.8301(1) (emphasis added). Our courts have held that, because the district court is limited to deciding cases in which the amount in controversy does not exceed $25,000, it "may not award damages in excess of that amount." *Hodge*, 499 Mich at 216-217. "In other words, a plaintiff pleading a case of damages for $25,000 or less who proves and obtains a verdict for more than $25,000, would still be limited to awardable damages of not more than the district court's jurisdictional limit of $25,000." *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 719; 909 NW2d 890 (2017), citing *Hodge*, 499 Mich at 224.

## C. THE CROSS OF TWO LINES OF PRECEDENT

The critical question in this case lies at the cross of two lines of precedent. In the first line, our courts have long recognized that this state follows "the American rule" with respect to attorney fees. *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). Generally speaking, each party bears its own litigation expenses, including that party's own attorney fees, and therefore these expenses are usually not part of the matter at controversy between the parties. See *Hodge*, 499 Mich at 223-224; see also 14AA Wright & Miller, Federal Practice & Procedure: Amount in Controversy (2020), § 3712; *Denbo Iron & Metal Co v Transp Ins Co*, 792 F Supp 1234, 1236 (ND Ala, 1992). Trial courts can award expenses (including fees) to a prevailing party under certain circumstances, see, e.g., MCL 600.2591, but for the most part, each party is responsible for paying its own expenses to pursue its claims or mount its defenses. Moreover, it will not be known for certain at the outset how much a party will incur in attorney fees during the lawsuit, and subject-matter jurisdiction must be established at the outset. Accordingly, when determining the amount in controversy of a lawsuit, courts generally do not consider a party's own "fees, costs, and interest" in that calculation. *Hodge*, 499 Mich at 223-224. And particularly relevant here, when "fees, costs, and interest" are not part of the amount in controversy, an award to the prevailing party for reimbursement of these expenses is not subject to the district court's $25,000.00 cap on damages. See *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 569; 840 NW2d 375 (2013).

The second line of precedent also begins with the American rule. This precedent recognizes that the American rule is not an absolute one, and parties can contract around it, as the parties did here with their fee-shifting provision in the lease. *Central Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 548; 362 NW2d 823 (1984) ("Contractual provisions for payment of reasonable attorney fees are judicially enforceable."). When parties do this, a claim of attorney fees under a contractual fee-shifting provision is one for general damages. *Pransky*, 311 Mich App at 194. And as relevant here, general damages count toward the amount in controversy. *Souden v Souden*, 303 Mich App 406, 412; 844 NW2d 151 (2013).

These two lines of precedent cross in this case. If we hold, as defendant urges, that an award of contractual attorney fees is to be treated no different than any other instance of "fees, costs, and interest" incurred by a party, then the district court's award to defendant of contractual fees under the lease would not be subject to that court's subject-matter jurisdiction. In that instance, the fee award would not be subject to the $25,000.00 cap. Alternatively, if we hold, as plaintiff argues, that an award of contractual fees is to be treated different than other instances of "fees, costs, and interest" incurred by a party because it is an award on a claim for general damages, then the district court's fee award would be subject to that court's subject-matter jurisdiction and the $25,000.00 cap.

D. CONTRACTUAL ATTORNEY FEES AS PART OF THE AMOUNT IN CONTROVERSY

We begin our analysis by determining whether the district court had subject-matter jurisdiction in the first instance. See *Clohset*, 302 Mich App at 560 (holding that courts must, upon challenge, "or even sua sponte, confirm that subject-matter jurisdiction exists"). When examining whether there is subject-matter jurisdiction, courts look to the face of the parties' pleadings and "the amount prayed for in the complaint" to determine the amount in controversy. *Hodge*, 499 Mich at 220-221.

Neither party prayed for damages in excess of $25,000. In fact, the various allegations of repair costs and breaches of contract were quite modest, and this is consistent with the district court's award of $2,692.56 to defendant on its breach of contract counterclaim. Both parties sought attorney fees, and their contractual fee-shifting provision left no discretion to the trial court—"the non-prevailing party *shall* be responsible for the payment of the actual attorney fees incurred by the prevailing party." Lease ¶ 52 (emphasis added). And yet, regardless of whether attorney fees were to be included in the amount-in-controversy calculation, neither party has suggested that there was a question raised at the outset of whether the amount in controversy was within the $25,000.00 limit. This makes sense, as the amounts sought for breaches of contract were modest, and one would not ordinarily expect that a dispute over such amounts would generate the attorney fees that were ultimately incurred in this case. Moreover, the parties have made no showing of bad faith, which could divest the district court of subject-matter jurisdiction. *Hodge*, 499 Mich at 215-216, 223-224. Accordingly, we are satisfied that the district court possessed subject-matter jurisdiction over this lawsuit. *Id.* at 217.

This does not, however, answer the question of whether a claim for contractual attorney fees is part of the amount-in-controversy calculation and thus subject to the district court's jurisdictional cap of $25,000.00. Michigan courts have long recognized that circumstances might change during a lawsuit, and the amount-in-controversy calculation is simply one made, based on the pleadings, for purposes of subject-matter jurisdiction. *Id.* at 223-224. Thus, the fact that actual damages proven at trial might exceed the district court's jurisdictional limit does not undermine that court's jurisdiction, *Peters v Gunnell, Inc*, 253 Mich App 211, 224 n 10; 655 NW2d 582 (2002) ("Jurisdictional allegations are not viewed in hindsight."), though that fact might mean that the prevailing party's damage award is capped at the jurisdictional limit, *Hodges*, 499 Mich at 216-217, 223-224.

Michigan courts have not squarely addressed how to treat contractual attorney fees with respect to the amount in controversy. Nor have we been able to glean much guidance on this

specific question from our case law. In *Peters*, for example, this Court recounted the general rule that attorney fees are ordinarily not counted toward the amount in controversy, but then suggested that fees required by statute to be paid to the prevailing party would count toward that calculation. See *Peters*, 253 Mich at 224 n 10. Fees required to be paid under statute are analogous to fees required to be paid under contract. With that said, the observation in *Peters* was dicta found in a footnote, and, therefore, we are hesitant to draw much guidance from this.

We turn next to case law outside of our jurisdiction. Federal courts have a rich body of case law dealing with this question in a different context—whether attorney fees required by contract or statute are to be included in the amount-in-controversy calculation for purposes of diversity jurisdiction. The weight of case law confirms that such fees are included. The U.S. Supreme Court, for example, has long held that when a statute provides for recovery of attorney fees, a reasonable estimate of those fees may be used in calculating the amount in controversy when a party seeks to remove a case on the grounds of diversity jurisdiction. See, e.g., *Missouri State Life Ins Co v Jones*, 290 US 199, 202; 54 S Ct 133; 78 L Ed 267 (1933). As another example, the First Circuit Court of Appeals recognized over four decades ago that attorney fees are usually not considered as part of the amount in controversy: "As a general rule, attorney's fees are excludable in determining the matter in controversy because, normally, the successful party does not collect his attorney's fees in addition to or as part of the judgment." *Velez v Crown Life Ins Co*, 599 F2d 471, 474 (CA 1, 1979) (cleaned up). The court went on, however, and recognized that this was not an absolute rule: "There are, however, two logical exceptions to this rule: one, where the fees are provided for by contract, and, two, where a statute mandates or allows the payment of such fees . . . ." *Id.* (cleaned up). Scores of cases have similarly recognized these two exceptions to the general rule in the federal-diversity context. See, e.g., *El v AmeriCredit Fin Servs, Inc*, 710 F3d 748, 753 (CA 7, 2013); *Kroske v US Bank Corp*, 432 F3d 976, 980 (CA 9, 2005); *Smith v GTE Corp*, 236 F3d 1292, 1305 (CA 11, 2001); *Miera v Dairyland Ins Co*, 143 F3d 1337, 1340 (CA 10, 1998); *Graham v Henegar*, 640 F2d 732, 736 (CA 5, 1981); *Clark v Nat'l Travelers Life Ins Co*, 518 F2d 1167, 1168 (CA 6, 1975); *Organic Consumers Ass'n v RC Bigelow, Inc*, 314 F Supp 3d 344, 353 (D DC, 2018); *Denbo Iron & Metal*, 792 F Supp at 1236; *Srour v Barnes*, 670 F Supp 18, 22 n 3 (D DC, 1987).

Defendant points us to a decision by the Supreme Court of Colorado, *Ferrell v Glenwood Brokers, Ltd*, 848 P2d 936 (Colo, 1993). The relevant facts in *Ferrell* are similar to those here. The dispute involved a real estate listing contract that included a fee-shifting provision. *Id.* at 938. The county court entered judgment in favor of Glenwood on its breach-of-contract claim and awarded the brokerage firm recovery of commissions paid to Ferrell as well as attorney fees under the fee-shifting provision. *Id.* Ferrell appealed to the district court (the next highest court in that jurisdiction), arguing that the attorney-fees award pushed the total over the county court's jurisdictional limit, defined by statute as "civil actions, suits, and proceedings in which the debt, damage, or value of the personal property claimed does not exceed five thousand dollars." *Id.* at 938-939 (citation omitted). The district court rejected Ferrell's contention and affirmed the county court.

On certiorari, the Colorado Supreme Court likewise affirmed. The *Ferrell* court first noted, "When Glenwood commenced its action against Ferrell, the total sum sought including the amount owed on the debt, interest thereon, and attorney fees payable by contract was within the jurisdictional limit." *Id.* at 940. Similar to the rule in Michigan, the court observed that the county

court did not subsequently lose jurisdiction simply "because Ferrell contested the case." *Id.* The court rejected the argument that once the dispute approached the county court's jurisdictional limit, it should have been transferred to the district court:

> Implementing such a rule would be a waste of judicial resources. Under that theory, cases properly filed in county court would be transferred to district court at any stage of the litigation, even on the eve of (or during) trial. Two, rather than one, courts would be required to process the same case before it was resolved. Such a rule also would encourage bad faith litigation and discourage settlement because fee-shifting contracts would be enforceable only to a very low limit. Furthermore, such contracts, which are clearly enforceable and serve to discourage non-meritorious contract disputes and to encourage settlement, would be ineffective to serve those purposes. [*Id.* at 940.]

The court held that the county court "was not ousted of its jurisdiction solely because, at the time judgment was entered, the amount of attorney fees and underlying debt sued upon exceeded $5,000." *Id.*

We conclude that the line of federal cases discussed above is more persuasive on the question at hand than *Ferrell*. Like with Michigan courts, the federal courts recognize that the American rule of bearing one's own litigation expenses is the general rule and, therefore, attorney fees should not ordinarily be considered as part of the amount in controversy. Like with Michigan courts, the federal courts also recognize that the American rule is not absolute, and parties can contract around that rule with a fee-shifting provision. And, like with Michigan courts, the federal courts further recognize that attorney fees that are sought under a fee-shifting provision are a form of damages, and damages are considered as part of the amount in controversy. It follows deductively that, like with federal courts, Michigan courts should recognize that a claim for attorney fees under the parties' contractual fee-shifting provision is part of the amount in controversy.

As to *Ferrell*, there are several reasons why defendant's reliance on that decision is not persuasive. First, the *Ferrell* court did not hold that contractual attorney fees were to be categorically excluded from the amount-in-controversy calculation. Rather, the court merely noted that the attorney fees payable by contract and incurred prior to the filing of the suit, together with other claimed damages, were "within the jurisdictional limit" when the lawsuit was filed. *Ferrell*, 848 P2d at 940. This is contrary to defendant's position that, like with other ordinary litigation expenses, *no amount* of attorney fees should be included in the amount-in-controversy calculation, whether incurred before or during the lawsuit. Second, it appears that, unlike with district courts in this state, the lower court in *Ferrell* was not prohibited from awarding damages above its jurisdictional limit. Because the award-based dynamics in the county courts in *Ferrell* were different than those in our district courts, the *Ferrell* court's efficiency-based remarks are arguably not as relevant or persuasive.

And finally, even setting these differences aside, the Michigan Court Rules provide precisely for the scenario that the *Ferrell* court found so troubling, i.e., the transfer of a case during the middle of litigation. Under MCR 4.002(A)(1), a defendant can bring a counterclaim, after the case has been initiated, seeking relief in an amount beyond the district court's jurisdictional limit.

-6-

The district court can then transfer the case to the circuit court, either based on notice and verified statement or motion. Even more on-point, MCR 4.002(B) permits either party to seek transfer of the case from district court to circuit court when that party seeks new relief "of an amount or nature that is beyond the jurisdiction or power of the court to grant." MCR 4.002(B)(1). In support of transfer, the moving party must show that (a) there was "a change in condition or circumstance," or (b) there are now "facts not known by the party at the time the action was commenced." *Id.* If the district court concludes that the party "may be entitled" to the relief now sought "and that the delay in making the claim is excusable," then that court must transfer the case to circuit court irrespective of any inefficiencies. See MCR 4.002(B)(2). Although there are inherent tradeoffs in terms of time and resources when a case is transferred from district court to circuit court during the middle of a lawsuit, our Supreme Court, by adopting MCR 4.002(B), has made clear that (1) maintaining the jurisdictional divide between the two trial courts, and (2) permitting a party to seek full recovery when new facts or circumstances permit, are worth the costs associated with transfer. See 5 Longhofer, *Michigan Court Rules Practice* (2020), § 4002.1 (noting that the rule reflects the fact "that causes of action are not static," and a transfer from district court to circuit court obviates the need to dismiss the district court action and refile it in circuit court).

Defendant further points out that, at the beginning of the lawsuit, neither party could know for certain the amount of attorney fees it would incur during the lawsuit. While this is no doubt correct, courts do not require absolute certainty from the parties when calculating the amount in controversy. As noted earlier, the amount-in-controversy calculation is simply a reasonable estimate based on the parties' pleadings, and federal courts have long recognized that, when fees are required by statute or contract, the parties can submit a reasonable estimate of the fees that the parties expect to incur during the pendency of the lawsuit. See, e.g., *Missouri State Life Ins*, 290 US at 202; *Miera*, 143 F3d at 1340. We see no reason why litigants in Michigan courts cannot do the same. In this case, given the parties' relatively modest claims for breaches of contract, it is likely that the parties did not expect that the attorney fees incurred by the prevailing party would exceed the damages awarded for the breach of contract claim by a factor of eighteen. But at some point, it had to become clear to at least defendant that its own attorney fees were approaching (and then eclipsing) the district court's jurisdictional limit. At that point, defendant could have sought to transfer the case to circuit court under MCR 4.002(B); it did not do so, and thus the case remained in district court and subject to that court's jurisdictional authority.

In sum, we hold that contractual attorney fees are an element of general damages and are to be included in the amount-in-controversy calculation for purposes of a district court's jurisdiction. If a dispute involves a contract with a fee-shifting provision and a party makes a claim for attorney fees under that provision, then that party can submit a reasonable estimate of such fees that it expects to incur during the lawsuit for purposes of determining the amount in controversy. Therefore, the district court did not err in capping the award of contractual attorney fees to defendant at $22,307.44, nor did the circuit court err in affirming the district court on this issue. Given our holding on defendant's first claim of error, we need not reach its second claim that the district court erred in awarding defendant reasonable, rather than actual, attorney fees, as a full award under either calculation would exceed the district court's cap on the damages it can award in this case.

### III. CONCLUSION

Contractual fee-shifting provisions are an exception to the American rule that a party must bear its own litigation expenses. A claim for attorney fees under such a provision is a claim for damages under existing case law. Thus, when calculating the amount in controversy for purposes of a district court's jurisdictional limit, a party's claim for attorney fees under a fee-shifting provision should be included, and any award of such fees by the district court is subject to that court's jurisdictional limit.

Accordingly, the district court in this case properly reduced the award of fees to defendant under the parties' lease to fit within the court's jurisdictional limit, and the circuit court properly affirmed the district court on this issue.

Affirmed. Plaintiff, having prevailed in full, may tax costs under MCR 7.219(F).

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Stephen L. Borrello